Good morning, Your Honors. May it please the Court, Jonathan Liddyapin on behalf of Appellant Miguel Moriel-Luna. Your Honors, as an initial matter, I would note that this Court has already held that Mr. Moriel's due process rights were violated at his deportation proceedings because the immigration judge failed to advise him of possible relief from deportation. This Court has also found that he was prejudiced as a result of that. So the primary issue with- Wait a minute, counsel. We found a due process violation. Didn't our prior panel remand to permit the district court to conduct a hearing on prejudice? Wasn't that the scope of the remand? Not exactly, Your Honor. What the prior panel found was that Mr. Moriel had made a promofacial case of prejudice. The burden then shifted to the government to establish that there was no possibility of relief from deportation despite the fact that he had established prejudice. But that is a determination of prejudice on the merits, is it not? The fact that we remanded it for a hearing does not sound to me like we found the first time around that there was prejudice. We said you've shown enough to necessitate a hearing, an evidentiary hearing. Well, he had shown enough prejudice to shift the burden then to the government to establish that there was no possibility of relief. And what the government had argued in the first appeal was that there was no immediately available visa. So despite the fact that he- Mr. Libby, let me come at this a different way. You are here on appeal the second time around because the district court found no prejudice. And is your argument that the district court could not find no prejudice because our prior panel had already made that determination? I don't think that's your argument, is it? Well, again, the district court's finding here, based on the remand, then there's some issue as to how limited the remand- Right. Before we get to that- Before we get to that. Let's just get past the prejudice problem here. The issue again was whether the- and if I could just pull the court's- Sure.  Yeah. What this Court held previously, to prevail, Mr. Morreale must demonstrate that he had a plausible ground for relief from deportation. Morreale has shown that he may not have been deported because a section 212c waiver of deportation could have been granted, which would have enabled him to adjust his status under section 245a. Failure to advise Morreale of this plausible relief prejudiced him. So this Court held that the denial of his due process rights prejudiced him. Well, counsel- And of course he said- If that's the case, I'm looking at page 4 of the panel's prior order. We said we therefore remand this case for the district court to determine whether the government can demonstrate that a visa was not And the district court decided after the remand that there was none immediately available, and therefore he was not entitled to relief. Isn't that- That was not a prejudice claim. Counsel, let me finish my question. Sure. Isn't that tantamount to a finding that your client suffered no prejudice from the due process violation? No, Your Honor. Why not? Because, again, this Court had already found prejudice. And as the prior panel found, after finding that there was, in fact, prejudice, it discussed what the government argued, and notes that, if I could find it, after defendant makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceeding's outcome. So it's not a prejudice determination by the district court on the remand. It was a determination whether the government could meet its burden that, despite the fact that there was prejudice, that there was a plausible ground for relief from deportation, that there still could not have been any resulting harm because he could not have been- I just don't understand your argument. If what you say is true, there would have been no need for the prior panel to order a remand. But we did. And a hearing was held, and now we're back. And it seems to me that you are arguing that we have to overturn the district court's determination that there was no prejudice because there was no visa immediately available, and, therefore, it wouldn't have made any difference. Now, you can call it whatever you want. In my mind, that's no prejudice. So, I mean, maybe you and I have exhausted- Perhaps. Perhaps you should move on to the discussion of the availability of a visa. Well, that's fine because, again, and this has to be remembered, it is not Mr. Morreale at this point who had the burden to establish anything. Well, he has the burden to establish both that there was a violation of due process, which I think is law of the case. That's what our first panel said. Correct. But he also has the burden to show the second prong, which is prejudice, and the district court held against it. Now, you need to convince us that the district court erred as a matter both of fact and of law in finding that second prong was not met. That's what I understand your burden on appeal to be. Do you agree? Again, no. I don't agree, Your Honor, because, again, and a quote from the Court's prior decision, failure to advise Morreale of this plausible relief prejudiced him. Okay. Let's assume that you lose on that argument. Why don't you proceed with the rest of your argument? Okay. Well, again, Your Honor, it's our position that the primary issue now before this Court is whether the government has demonstrated that there was no possibility of relief from deportation. In making that determination, the issue is not whether Mr. Morreale would have been granted relief. The issue is whether he could have been granted relief from deportation. Well, on what ground could he have been granted at the moment that he stood before the immigration judge? Well, he was in deportation proceedings when he was before the immigration judge. Yes. And what we have submitted is an immigration judge has a great deal of discretion to grant a continuance. A continuance is not immediate, is it, counsel? The problem I'm having, and maybe this whole case turns on semantics, I view immediately available to mean right now, here, present in the courtroom before the immigration judge. Your argument is, well, no, it means it's a little broader than that. If the immigration judge had granted a continuance, he would have married his girlfriend, his parents would have taken steps to seek relief. I just don't see that as immediately available. And what case supports your argument? Well, I would go, actually, to the statute and to the CFRs. Well, the statute says immediately available. So why does immediately available mean not now? Because what the statute says is that a visa needs to be immediately available at the time of the application for adjustment of status. Now, had the deportation proceedings been continued and Mr. Muriel had married his then-fiancé, then his fiancé could have then made application for adjustment of status, and at the time of the application, a visa would have been immediately available. But isn't the problem that once he's placed in deportation proceedings, he can't make that application? That is not the case, Your Honor.  In this case, he couldn't make it without a continuance. That is true. Okay. So he didn't have it immediately available because there was no application then pending. Well, but the issue is, again, could this have happened? In the future. Counsel, counsel, did he ask for a continuance? He did not. Did he ask for it? Okay. So if he doesn't ask for a continuance, is it your position is that the IJ has to sui sponte, give him a continuance, because there might be a speculative way he could get relief? Well, the immigration judge had the obligation to advise Mr. Muriel of every single potential relief from deportation. The fact that, and this Court has already held, he did not advise him of all possible avenues of relief. Mr. Muriel perhaps was not aware that he needed to get a continuance in order to proceed further. Had he been aware, because the immigration judge had advised him of stuff, he would have known what he needed to do. But didn't Mr. Muriel say that he was single? In response to a specific question, are you married or single? And his answer was I'm single. He said single. But he didn't say anything about a girlfriend or a fiancé, did he? He did not. And that's perhaps the fault of the immigration judge for not posing the question properly. Fault of the immigration judge or fault on the alien, I don't know. What's the spectrum? Let me finish my question. What in that answer would have alerted the immigration judge to the potential that Mr. Muriel Luna was contemplating marriage? Well, in respect to that, obviously the immigration judge could not have known that. However, the problem is the immigration judge has certain obligations. This is not a, like in a district court judge in a criminal proceeding where you are supposed to have counsel or if you waive counsel, you're on your own. In an immigration proceeding, it's very clear that you have Fifth Amendment right to counsel. And if you proceed without counsel, the immigration judge has the obligation to, in fact, act almost instead of counsel and is obligated to advise the alien of all possible relief from deportation because the immigration law is so complicated. Aliens are not expected to know every possible relief from deportation. But going back to the statute, if he's a single man and he doesn't have immediately available an adjustment of status that he could procure in the future through marriage to an American citizen, why would that trigger an obligation on the part of the immigration judge to advise him about something that he's not entitled to right now? But it is something that he could be entitled to. But isn't it? Aren't you subjecting immigration judges to an impossible situation? I don't think so. If they have to explore every possibility, aside from advising them of 212, aren't you opening it up to all kinds of fraud and difficulties for the immigration judge? Well, the immigration judge already has the obligation to think up all possible avenues of relief. I'm not sure they have to speculate. Well, they don't have to speculate. But certainly they're supposed to look in the record and discuss with the alien factual matters that could result in certain avenues of relief. Now, he was asked a certain question, are you married or are you single, and he answered in response to the specific question. Now, have the Court given a more open-ended question, what is your marital status? Then that could have likely gone in response of I'm engaged, which was in fact the case, as we now know. But marital status means are you married or not. I don't understand how marital status would lead to a responsive answer, I'm engaged. Well, it may not have. And if it had not. That's a third category of marital status that I know of no case law to support. Either you're married or you're single or you're divorced, I guess. Well, except under the Immigration Law itself, it acknowledges the category of engaged individuals, and there is a procedure actually that permits immigrants to in fact emigrate to this country for a limited period if in fact they're engaged. And so the Immigration Law has already recognized that there is that relationship. And we know, based on the facts, and I don't think there's any real dispute, that he was in fact engaged to be married at the time. He in fact married his wife later that same year, had his first of four children a few months after that. They've been married now for 15 years. I understand all the equities, but I'm just going back to the language of the statute, which says immediately available, and that's where I'm having a hard time going as far as you want to take us. Well, and I understand that we're dealing somewhat in the area of speculation here, which is just the nature of the beast when you're dealing with a proceeding that happened 15 years ago. The issue is, did the government meet its burden that no possibility of relief could have existed? And that's what we come down to. Because it's our position there is a possibility of relief, yes, certain things would have had to have taken place. But because that does establish a possibility of relief, then the government doesn't meet its burden. That's where I guess I'm having a hard time following you. Isn't the burden on the alien to show that relief was immediately available to him? You want to put the burden on the government to prove the speculative, but the statute puts the burden on the alien to show that relief is immediately available. Well, and again, I go back to the prior panel's decision. The law of this Court is that after defendant, quote, makes a promissory showing of prejudice, which happened here, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceeding's outcome. That's from Gonzales-Valerio. So the burden shifted. We met our initial burden already. The burden then shifted to the government to meet its burden. And that's the position of the case right now. And that's what we're saying. The government failed to meet its burden that no possibility existed. And I see I only have a minute left. I say we worry about it. Okay. Thank you. Good morning, Your Honor. May it please the Court. Doug McCormick for the government. I'm in a bit of a unique situation because I am practically the only person that was here two years ago when we argued this case the last time before the Court. And we got to the immigrant visa issue, and things got held up to some extent, and we got remanded back to Judge Tallman, and now we're back. My understanding of the procedural threshold status of this case is much the same as yours, Judge Tallman. The prior panel made a finding that there had been a procedural violation that was the immigration judge's failure to advise Mr. Morial Luna about the potential for certain relief. And at that point, the question became whether that procedural violation could have changed or could have had an effect on the proceedings outcome. The first threshold issue we argued last time was that the answer was no because there was no immigrant visa immediately available to Mr. Morial Luna. And the panel stopped me dead in my tracks and said, you know, there's just not a record in the district court for us to determine whether that's correct or not. We're not a finding court. We're a court of law. We need to send this back to the district court so it can make some findings on that issue, which it did. And when we went back to the district court, in essence, the defendant essentially conceded that there was no immigrant visa immediately available to him. And essentially what he argued was that there was a immigrant visa potentially available to him, which is an altogether different argument, and it encounters some bit of speculation on his part that he could have obtained a delay in his deportation proceedings, which would have allowed him to engage in either a marriage or to allow his parents to naturalize. In fact, in the district court, as I was reading the record this morning, the argument really focused on the naturalization of his parents and much less on the marriage issue. But that's where we are procedurally. And I'm prepared to discuss with the court the fact that our view that immediately available means immediately available, but I think the court seems pretty clear. I understand. I mean, I think I'm at least speaking only for myself. I understand what the statute says, but what's your answer to Mr. Libby's trying to characterize this not as an application of a statutory burden, but an application of a shifting burden of proof based on the prior panel's ruling? Well, and to some extent, I think, I don't think Mr. Libby's wholly incorrect. I mean, once there is a failure to advise Mr. Morial Luna of a potential avenue for relief, which is what the district court found, I'm sorry, what the prior panel of this court found, which is he had some ability through adjustment of status and 212C or 212H. He had some potential ability for relief. The immigration judge did not advise him of that. So there was a procedural violation. At that point, the government does have the burden of showing that that procedural violation could not have affected the outcome of the proceedings. And our first argument before and now is that the answer to that question is the procedural violation could not have affected the outcome of the proceedings because there was no immigrant visa immediately available and he could not apply for adjustment of status. Or, frankly, rather, had he applied for an adjustment of status, the fact that there was no immigrant visa immediately available would have resulted in a very swift denial of that application. So if I understand your argument, you accept the shifting of the burden to show that there was no relief that was immediately available to him. Correct. And you look to the statute which says the alien must show that relief is immediately available. Correct. Because you have shown that there was none. That meets your shifted burden of proof and establishes as a matter of law that the alien was not prejudiced by the due process violation because the outcome of the proceeding could not have been affected. I think that's correct, Your Honor. I think it's not just as a matter of law. I think that's what the district court found, and there's been no showing that the district court's findings were somehow in any way erroneous. The district court looked at what the status of the immigrant visa backlog was as of the deportation hearing. In fact, the defendant did not contest our showing on that ground and said that as the unmarried adult son of lawful permanent resident parents, the defendant did not have an immigrant visa immediately available. Now, I understand the defendant's argument is, well, his proceedings could have been continued to allow him to either naturalize his parents or get married to a U.S. citizen, but there is no authority in any court or any regulation or in the language of the statute to support that suggestion. And the way the district court sort of characterized it was that the deportation proceedings would be allowed to linger so that the individual could put himself into a position where an immigrant visa would be immediately available. So that's essentially the government's position on the first issue, which is the immigrant visa issue. I'm prepared to address, I think, the other issues if the court is going to resolve the immigrant visa in favor of the defendant. And I think there are other ways in which the court can affirm the district court's decision below, but I'm also prepared if the court is satisfied to sit down with that. Any other questions from the panel? I have no questions. Maybe I'm oversimplifying this in my mind, but my understanding is that the remand was to develop a record as to whether, if advised of 212C, like he could have gotten any relief, and the district court said no visa was immediately available. Right. Therefore he could not have gotten relief. Correct. Your Honor, the only way that the defendant, because of the status he was in, the only way he gets the 212C or 212H relief is through adjustment of status. And essentially I'm hardly an immigration expert, but I've dabbled in it enough to know that essentially the 212C and 212H relief are generally relief that applies to exclusion proceedings, and it's by applying for adjustment of status that we engage in this sort of legal fiction by which these deportation proceedings are sort of converted to an exclusion proceeding and these 212C and 212H remedies become available. But adjustment of status is a necessary step. And to obtain adjustment of status, you must have an immigrant visa immediately available. So that's the threshold issue we went back on the remand for, and in the government's view the district court's resolution of that issue is the first issue and potentially the last issue this court must decide. There being no other questions, I'm prepared to submit. Thank you very much, counsel. Your Honor, I'm not sure how much more I can say. Deportation proceedings are allowed to linger all the time. They were continued in this case once because Mr. Morreale's attorney did not show up or there was an issue of whether or not he in fact had an attorney. So they were already continued. They could have been continued. I don't – and while, yes, that's speculation, again, the issue is whether there was a possibility that this could have happened. And that's the standard. And unless the Court has any additional questions, I would submit on that. All right. Thank you very much, counsel. Thank you both for your argument. The case just argued is submitted. The next case on the calendar, United States v. Rodriguez-Rangel, is submitted on the brief for the last-year argument in the case of Del Taco, LLC v. Solomon.
judges: Gould, Tallman, Panner